FILED

13 SEP -3 PM 2: 37

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WOULFE,<br><br>                              Plaintiff,<br><br>vs.<br><br>UNITED STATES GOVERNMENT,<br><br>                              Defendant. | CASE NO. 12cv2122-L (KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS BASED UPON PLAINTIFF'S FAILURE TO PARTICIPATE IN AGREED UPON INDEPENDENT PSYCHIATRIC EXAMINATION**<br><br>[Doc. No. 14] |

Presently before the Court is defendant's Motion for Sanctions for Failure to Participate in Agreed Upon Independent Psychiatric Examination. [Doc. No. 14] The parties present with a fee dispute over who should bear the costs associated with a failed Independent Psychiatric Examination. Based on the moving and opposing papers [Doc. Nos. 14, 16, 17], the relevant law, and for the reasons outlined below, defendant's Motion for Sanctions [Doc. No. 14] is **GRANTED**.

## I. BACKGROUND

On August 28, 2012, plaintiff Richard Woulfe filed a Complaint against defendant United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.* [Doc.

No. 1] Plaintiff alleges that Laura O'Farrell, while acting within the course and scope of her employment as an agent for the Federal Bureau of Investigation, caused him to suffer damages through her negligent acts. Specifically, plaintiff contends that Ms. O'Farrell, while on duty, caused her automobile to collide with plaintiff's vehicle. The collision resulted in plaintiff allegedly suffering severe and on-going physical, mental, and economic injuries.

On July 26, 2013, defendant filed the Motion for Sanctions presently before the Court. [Doc. No. 14] The Motion seeks payment from plaintiff "based upon his failure to participate in the agreed upon Independent Psychiatric Examination ('IPE') by [d]efendant's retained expert in psychiatry, Alan A. Abrams, M.D., J.D. ('Dr. Abrams')." [Doc. No. 14-1, p. 1] Defendant seeks $2,950 in sanctions, which constitutes the amount billed to defendant by Dr. Abrams for the time he spent preparing for and attempting to conduct the May 1, 2013 IPE of plaintiff. *Id.*

Plaintiff and defendant disagree about the reason why the May 1, 2013 IPE failed, and thus, disagree about who should bear financial responsibility for the bill submitted by Dr. Abrams. According to defendant, plaintiff refused to participate in the IPE and his actions alone caused the IPE to end prematurely. In support of this position, defendant points out that prior to the examination, plaintiff's counsel insisted that the entire IPE be audio recorded. [*Id.* at 1-2; Doc. No. 14-2, e-mail correspondence attached as Exhs. 1-2]. On the date of the attempted exam, plaintiff and Dr. Abrams exchanged formalities and plaintiff was presented with a consent form for his signature. [Doc. No. 14-1, p. 2] Plaintiff refused to sign it, finding a clause contained therein to be objectionable. *Id.* Dr. Abrams permitted plaintiff to speak with his counsel, faxed the consent form to plaintiff's counsel for review, and modified the consent form as plaintiff requested. *Id.* Within minutes of resolution of the consent form issue, plaintiff became upset when Dr. Abrams notified him that he would be recording their conversation when the recording device had, in fact, already been turned on. *Id.* According to Dr. Abrams, plaintiff then "became very angry" and "stormed out of the office" after accusing Dr.

- 2 -

1 Abrams "of tricking him." [*Id.*; Doc. No. 14-2, p. 11]

2     With the situation escalating, the parties took a lunch break and counsel for both

3 parties were summoned to Dr. Abrams' office to assess how to proceed. [Doc. No. 14-

4 1, p. 2] During this break, counsel jointly listened to the recording between Dr. Abrams

5 and plaintiff. *Id.* Given what had transpired, counsel agreed that an IPE with Dr.

6 Abrams under the circumstances would be unsuccessful. *Id.* Defendant thereafter

7 received an invoice from Dr. Abrams for $2,975 for the time he spent preparing for and

8 attempting to conduct the IPE of plaintiff. *Id.* at 3. Defendant argues that sanctions are

9 warranted because plaintiff's "abusive conduct delayed discovery and resulted in

10 unnecessary expenses to the United States." *Id.* at 5.

11     Plaintiff opposes defendant's Motion "on the fundamental basis that there was no

12 failure [by plaintiff] to participate" in the IPE, but rather Dr. Abrams created such a

13 "hostile and abusive environment" that "[p]laintiff could not emotionally and

14 psychologically continue." [Doc. No. 16, p. 4] Thus, plaintiff asserts, it was solely Dr.

15 Abrams' conduct that foreclosed the possibility of completing the scheduled IPE. *Id.*

16 Supporting this theory, plaintiff cites the disputed clause in the consent form, the

17 allegedly inadequate notice given regarding when the audio recording device was turned

18 on, patronizing and condescending comments plaintiff contends were made by Dr.

19 Abrams, and allegations that portions of the recording had been intentionally altered or

20 erased by Dr. Abrams.

21     As to the consent form, the disputed and eventually stricken clause purported to

22 grant Dr. Abrams permission to speak to "collateral informants about their knowledge

23 of [plaintiff's] mental health conditions, behaviors, emotions, and other relevant

24 information." *Id.* at 5. Plaintiff argues that this clause constituted an unethical attempt

25 by Dr. Abrams to circumvent unspecified discovery rules. *Id.* at 12. Regarding the

26 recording device, plaintiff claims the root of the dispute stems from Dr. Abrams' failure

27 to properly notify him the moment the recording device was turned on. *Id.* at 7. Plaintiff

28 also accuses Dr. Abrams, without any discernable support, of "eras[ing] part of the

    12cv2122-L (KSC)

1    conversation ... [which] appear[ed] to be incomplete or altered." *Id.* at 8.

2            As a result of his experiences with Dr. Abrams, plaintiff contends that he became

3    "extremely upset, anxious and agitated" because he felt that Dr. Abrams was

4    intentionally attempting to manipulate him with "underhanded and deceitful" conduct.

5    *Id.* at 7-10. Citing a Colorado state appellate case, plaintiff asserts that psychiatric

6    examiners have a duty not to inflict harm or injury on examinees, and that abusive exams

7    can "cause irreparable psychological injury." *Id.* at 14. Plaintiff asserts that Dr. Abrams

8    should be held financially responsible for the failed IPE because his conduct fell below

9    the standard of care. *Id.* at 15-16.

10           To rebut plaintiff's arguments, defendant asserts that Dr. Abrams, at plaintiff's

11   counsel's specific request, properly attempted to record the IPE session. Defendant

12   points out that the slightly delayed notice given regarding the activation of the recording

13   device during the failed IPE with Dr. Abrams was immaterial, and the delay was almost

14   identical to the circumstances of another recorded IPE with plaintiff conducted by a

15   different medical professional in this same case – which IPE was described by plaintiff

16   as being acceptable and meeting the standard of professional care. [Doc. No. 17, p. 3]

17   Defendant reiterates that Dr. Abrams conducted himself in a professional and ethical

18   manner, accommodating every request made by plaintiff [*Id.* at 3-6], and that plaintiff's

19   own expert witness in psychiatry, Dr. Addario, encountered similar difficulties while

20   working with plaintiff. *Id.* at 5. Notwithstanding his alleged brain injury, defendant

21   argues that plaintiff travels frequently and should not have been disturbed by merely

22   "unexpected inter-personal events" with Dr. Abrams. *Id.* at 6.

23           Defendant further asserts that plaintiff was "not compelled to do anything he did

24   not want to do in the attempted IPE," and that his independent choice not to participate

25   "delayed discovery and resulted in unnecessary expenses to the United States." [Doc.

26   No. 17, pp. 6, 8] Plaintiff's admittedly "fuzzy" memory should also cause the Court to

27   reject plaintiff's characterization of the terminated IPE. *Id.* at 4. As defendant argued,

28   plaintiff "willfully refused to participate" in the IPE, and thus, should be forced to pay

                                    - 4 -                              12cv2122-L (KSC)

1  sanctions to defendant for the associated costs. *Id.* at 1.

## II. DISCUSSION

3        "Federal Courts have the authority to sanction litigants for discovery abuses both
4  under the Federal Rules of Civil Procedure and pursuant to the court's inherent power
5  to prevent abuse of the judicial process." *Finley v. Hartford Life and Accident Ins. Co.*,
6  249 F.R.D. 329, 331 (N.D. Cal. 2008) (citations omitted). Federal Rule of Civil
7  Procedure 37(b)(2)(A) authorizes the court to order sanctions if a party "fails to obey an
8  order to provide or permit discovery, including an order under Rule . . . 35 . . . ."
9  FED.R.CIV.P.37. In this case, because plaintiff voluntarily agreed to participate in the
10  IPE with Dr. Abrams, no court order was entered under Rule 35(a) requiring plaintiff's
11  participation. Thus, for sanctions to be appropriate, if at all, they will arise under this
12  Court's inherent powers, and not pursuant to Rule 37.

13        A court's ability "to levy sanctions in response to abusive litigation practices" is
14  "well-acknowledged" as being within its inherent powers. *Roadway Exp., Inc. v. Piper*,
15  447 U.S. 752, 764 (1980) (*quoting Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962));
16  *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (a court has authority to
17  "manage [its] own affairs so as to achieve the orderly and expeditious disposition of
18  cases"). The power to sanction "extends to a full range of litigation abuses," *Chambers*,
19  501 U.S. at 46, and there is "no question" that a court may impose sanctions for
20  "delaying or disrupting" litigation. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir.
21  2001)(quoting *Chambers*, 501 U.S. at 46). When sanctions are imposed pursuant to a
22  court's inherent authority, the Ninth Circuit has "consistently focused on" whether the
23  conduct at issue is tantamount to bad faith. *Fink*, 239 F.3d at 992; *see also Roadway*,
24  447 U.S. at 766-67. "Bad faith" encompasses "a broad range of willful improper
25  conduct," and a finding of "subjective bad faith" is not required to impose sanctions.
26  *Fink*, 239 F.3d at 992-94 (remanding for determination whether there was conduct
27  tantamount to bad faith).

28        District Courts in the Ninth Circuit have awarded sanctions for a plaintiff's failure

1  to appear for an independent medical or psychiatric examination ("IME" or "IPE"). For
2  example, in *Breeden v. Vons*, 2012 WL 2860688 (D. Nev.), defendant was awarded
3  reasonable compensation for plaintiff's failure to appear at an IME properly scheduled
4  by defendant. *Id.* at *4. The plaintiff in *Breeden* did not appear because she was
5  attending to a sick child and forgot about the examination. Though plaintiff's failure to
6  participate was unintentional and not in violation of a court order, the court found
7  sanctions were warranted. *Id.* ("There [was] no evidence that plaintiff's failure to appear
8  at the IME was willful."). However, because plaintiff was unable to show that her
9  "failure [to appear was] justified," the court awarded sanctions because plaintiff's
10  behavior "result[ed] in defendant incurring unnecessary expenses." *Id.* at *3-4.

11      District Courts have also awarded sanctions in instances where parties actually
12  appeared for the scheduled examinations, but circumstances or behaviors hindered the
13  examination's completion. In *Page v. Hertz Corp.*, 2011 WL 5553489 (S.D.), plaintiff
14  arrived for an examination, but his discomfort was so immediately apparent to the
15  examining physician that the "neurobehavioral status examination really never got
16  started, and no testing was completed." *Id.* at *2-3. Based on plaintiff's body language
17  and his statement that he "didn't feel good" about the examination, the physician
18  encouraged plaintiff to contact his attorney. *Id.* After speaking with his attorney, plaintiff
19  declared, "[T]his just isn't going to happen," and left. *Id.* Defendant moved for sanctions
20  based on plaintiff's "flat refusal, without justification, to undergo" examination. *Id.* at *8.
21  Plaintiff argued that the "extreme" conditions created by his schedule and his alleged
22  brain injury overbore his "genuine effort" to participate. *Id.* The court was unconvinced,
23  citing that plaintiff never indicated that he experienced pain at any point during the
24  terminated exam, and that neither defendant nor his doctor intentionally attempted to
25  distress plaintiff. *Id.* at *11-12. Based upon the totality of the circumstances, the court
26  awarded monetary sanctions and found that plaintiff's characterization of the
27  circumstances was "exaggerated and unjustified," and that the plaintiff's failure to
28  participate in the agreed upon examination was not substantially justified. *Id.*

1    Further, District and Circuit Courts have even imposed terminating sanctions in

2    cases where parties failed to appear for IPE's or IME's, pursuant either to the court's

3    inherent powers or Rule 37(b). *See Enwere v. Terman Apartments, L.P.*, 2009 WL

4    1814423 (N.D. Cal.) (dismissing action where plaintiff "stormed out of" IME and

5    "defiantly refused to cooperate in any meaningful way in the [e]xamination, rendering

6    it completely useless"); *Koelling v. Livesay*, 239 F.R.D. 517 (S.D. Ill. 2006) (upholding

7    dismissal where plaintiff refused to cooperate in examination despite agreement to

8    request by defendant); *Daggett v. Wollangsk*, 189 Fed. Appx. 504 (7th Cir. 2006)

9    (affirming dismissal after failure to submit to ordered IME).

10    Plaintiff relies on two state court cases in support of his position that Dr. Abrams

11    violated his duty of care by creating a hostile and upsetting examination environment,

12    thereby excusing plaintiff's refusal to participate in the IPE. These two non-binding state

13    court decisions, *Greenberg v. Perkins*, 845 P.2d 530 (Colo. 1993), and *Dyer v.*

14    *Trachtman*, 679 N.W.2d 311 (Mich. 2004), stand for the proposition that a physician

15    conducting an IME or IPE has a duty "to perform the examination in a manner not to

16    cause physical harm to the examinee." *Dyer*, 679 N.W.2d at 315. While plaintiff does

17    not assert that Dr. Abrams caused him physical harm, plaintiff extends the logic of these

18    cases to the context of mental exams and concludes that because of Dr. Abrams' actions,

19    plaintiff became "extremely anxious" and experienced a "serious and emotional

20    reaction." Plaintiff cites *Dalton v. Miller*, 984 P.2d 666 (Colo. Ct. App. 1999) as

21    authority to support his assertion that Dr. Abrams "has a duty not to upset the examinee."

22    [Doc. No. 16, p. 13]

23    Plaintiff fails to cite any binding legal authority from the Ninth Circuit. This Court

24    concludes that the plaintiff's failure to participate in the agreed upon IPE was not

25    substantially justified. With respect to the tape recording, while it may be best practice

26    to inform an examinee the instant a recording device is turned on, plaintiff had fair notice

27    that the entire examination would be recorded, as requested by his own attorney. Further,

28    during plaintiff's subsequent successful examination with Dr. Delis, an examination

plaintiff acknowledges as having been conducted professionally and within the requisite standard of care, Dr. Delis similarly did not immediately inform plaintiff that the tape recorder was on, but rather waited until eleven (11) lines into the transcript before advising plaintiff. [Doc. No. 17, p. 3] The Court also notes that the portion of the conversation between plaintiff and Dr. Abrams which was recorded before plaintiff became aware that the machine had been turned on can best be characterized as administrative and non-substantive. Contrary to plaintiff's characterizations, the Court does not conclude that the slight delay of notice was "a trick," or "deceitful and underhanded behavior." Lastly, plaintiff fails to provide any evidence to support his allegation that Dr. Abrams intentionally doctored the tape to remove portions of the discussions. [Doc. No. 14-1, p. 2]

Concerning the remaining allegations about Dr. Abrams' behavior, namely the alleged patronizing and condescending comments, the Court is unpersuaded that any comments made by Dr. Abrams created such a "hostile and abusive environment" that plaintiff "could not emotionally and psychologically continue." [Doc. No. 16, p. 4] The remarks referenced by plaintiff do not justify his refusal to submit to the agreed-upon IPE. The Court notes that plaintiff's own designated expert witnesses acknowledged experiencing similar difficulties with plaintiff. [Doc. No. 17, p. 5] In sum, Dr. Abrams' conduct was not the cause of the failed IPE.

///
///
///
///
///
///
///
///
///

### III.  CONCLUSION

Plaintiff's failure to participate in the agreed upon IPE with Dr. Abrams was not substantially justified. By refusing to participate, plaintiff delayed and disrupted the preparation of this case for trial, and caused defendant to incur unnecessary expenses. Accordingly, the Court finds it appropriate to award reasonable costs associated with the failed IPE in the amount of $2,950.00.  Defendant's Motion for Sanctions [Doc. No. 14] is **GRANTED**.

**IT IS SO ORDERED**.

Date: September ___3___, 2013

KAREN S. CRAWFORD
United States Magistrate Judge

12cv2122-L (KSC)